IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,500

STATE OF KANSAS,
*Appellee*,

v.

ALFRED VAN LEHMAN JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

Parties cannot agree upon or stipulate to an illegal sentence.

2.

A party cannot be bound by a requested illegal sentence through the invited error doctrine.

3.

Contract principles do not prevent the State from challenging the legality of a sentence it agrees to recommend in a plea agreement.

4.

The Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights prohibit the State from twice putting a person in jeopardy for the same offense. The constitutional guarantee against double jeopardy includes, *inter alia*, protection against receiving multiple punishments for the same offense.

1

5.

When a person completes his or her original criminal sentence—even if an illegal sentence—without a court order that superseded the judgment of the original sentencing judge, that person is deemed to be discharged from custody and no longer subject to the jurisdiction of the criminal justice system. Any additional sentence for the same offense, imposed on a person who has completed his or her original, unmodified sentence constitutes a multiple punishment proscribed by the double jeopardy provisions of our federal and state constitutions.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 13, 2015. Appeal from Sedgwick District Court; GREGORY L. WALLER, judge. Opinion filed September 28, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, modified sentence is vacated, and case is remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Alfred Van Lehman Jr. seeks review of the Court of Appeals' decision to affirm the district court's modification of its originally ordered period of postrelease supervision after the original term of supervision had ended. We hold that, when the district court purported to correct Lehman's sentence, the original sentence had been completely served and the imposition of a new sentence was precluded by the double jeopardy provisions of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. Accordingly, we reverse the Court

of Appeals, vacate the new sentence, and remand to the district court to reinstate Lehman's discharge from supervision.

FACTUAL AND PROCEDURAL OVERVIEW

On August 10, 2009, pursuant to a plea agreement, Lehman pled guilty to aggravated sexual battery, a sexually violent offense. At the October 22, 2009 sentencing, the prosecutor announced:

> "Your Honor, we are asking the Court to follow the presumption in this case, which is for prison. We're asking the Court to sentence the defendant to 31 months with the Kansas Department of Corrections and order that he serve 24 months of post-release supervision once he completes the sentence in this case."

The district court followed the plea agreement recommendation and sentenced Lehman to 31 months in prison with 24 months' postrelease supervision.

According to the State's brief, approximately three years later, in the fall of 2012, the Kansas Department of Corrections (KDOC) notified the district attorney's office that Lehman's postrelease supervision term was in error. A year later, on October 15, 2013, the State filed a motion to correct an illegal sentence, claiming that the district court's imposition of the State-recommended sentence included an illegal postrelease supervision term. Specifically, the State contended that K.S.A. 22-3717(d)(1)(G) requires a person convicted of committing a sexually violent crime on or after July 1, 2006, to serve a mandatory lifetime of postrelease supervision. According to the State, the district court appointed counsel for Lehman and set the motion for hearing on November 22, 2013, but then continued the hearing to December 11, 2013.

Ultimately, the motion was heard on June 6, 2014. But in the meantime, some seven months earlier, on November 14, 2013 (prior to the originally set motion hearing

3

date), KDOC discharged Lehman from postrelease supervision. At the 2014 motion hearing, the district court opined that Lehman's discharge did not deprive the district court of jurisdiction to correct his illegal sentence, but rather the district court had such jurisdiction "for all time." The court ordered Lehman, who was approximately 24 years old at the time, to be on postrelease supervision for the rest of his life.

Lehman filed a notice of appeal to the Court of Appeals, claiming that there were three reasons that the district court could not order lifetime postrelease supervision after he had completed his entire sentence: (1) the completion of his sentence deprived the district court of jurisdiction to modify the sentence; (2) the resentencing violated double jeopardy rules; and (3) the State cannot complain because it invited the error by recommending the sentence that the district court originally imposed. The Court of Appeals affirmed the district court, holding that: (1) K.S.A. 22-3504(1) invests the district court with jurisdiction to correct an illegal sentence "at any time," which includes after the sentence has been completely served; (2) double jeopardy does not apply unless the defendant has a legitimate reason to believe that his or her sentence is final and the filing of the State's motion to correct an illegal sentence before Lehman's discharge negated that circumstance for him; and (3) the invited error doctrine is inapplicable to a mistakenly imposed illegal sentence. *State v. Lehman,* No. 112,500, 2015 WL 7162178, at *3-6 (Kan. App. 2015) (unpublished opinion).

This court granted review on all issues.

AUTHORITY OF DISTRICT COURT TO MODIFY A COMPLETED SENTENCE

The State's motion to correct an illegal sentence was filed pursuant to K.S.A. 22-3504 which reads in its entirety:

4

"(1) The court may correct an illegal sentence at any time. The defendant shall receive full credit for time spent in custody under the sentence prior to correction. The defendant shall have a right to a hearing, after reasonable notice to be fixed by the court, to be personally present and to have the assistance of counsel in any proceeding for the correction of an illegal sentence.

"(2) Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

The State contends that Lehman's sentence was illegal because the component of the sentence ordering Lehman to serve 24 months on postrelease supervision did not conform to the applicable statutory provision requiring a person that is convicted of a sexually violent offense to serve a lifetime on postrelease supervision. See *State v. Gilbert*, 299 Kan. 797, 801, 326 P.3d 1060 (2014) (defining an "illegal sentence" under K.S.A. 22-3504 as: "[1] a sentence imposed by a court without jurisdiction; [2] a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or [3] a sentence that is ambiguous with respect to the time and manner in which it is to be served"). Lehman does not dispute that his postrelease supervision term did not conform to statutory provisions. Rather, he argues that the district court did not have jurisdiction to modify his sentence after it was completed; that doing so violated the constitutional prohibition on double jeopardy; and that the invited error doctrine is a procedural bar to the State's motion to correct an illegal sentence.

*Invited error*

We take the liberty of first considering the argument that the invited error doctrine precludes the State from challenging the legality of Lehman's term of postrelease

supervision because the district court imposed the exact sentence requested by the State. If that alleged procedural bar were to apply here, we could quickly resolve the case.

The doctrine of invited error precludes a party from requesting a court to rule in a particular manner and then subsequently claiming that the court's ruling granting the party's request was erroneous. See, e.g., *State v. Soto*, 301 Kan. 969, 983, 349 P.3d 1256 (2015). In other words, if a party gets what that party asks for, the party cannot be heard to complain later. Here, the State specifically requested that the district court order Lehman to serve 24 months of postrelease supervision, which arguably misled the district court into pronouncing a sentence contrary to statutory requirements.

But we do not allow the parties to agree upon or stipulate to an illegal sentence. Cf. *State v. Hankins*, 304 Kan. 226, 231, 372 P.3d 1124 (2016) (defense stipulation not procedural bar to illegal sentence challenge); *State v. Dickey*, 301 Kan. 1018, 1032-34, 350 P.3d 1054 (2015) (stipulation as to how prior convictions are to be classified for criminal history purposes does not prevent subsequent illegal sentence challenge under K.S.A. 22-3504[1]). A corollary to the proposition that a party is not bound by his or her stipulation to an illegal sentence is that a party cannot be bound by a requested illegal sentence through the invited error doctrine. An illegal sentence may be corrected regardless of whether one or more parties may have had a hand in arriving at the illegality. Consequently, the invited error doctrine does not preclude the State's motion to correct an illegal sentence.

Lehman also suggests that "basic contract principles" should operate to bind the State to its plea agreement to recommend 24 months' postrelease supervision. But basic contract principles do not help Lehman. Generally, if a governmental agency enters into a contract that it has no power to make, the contract is ultra vires and unenforceable. See,

e.g., *Red Dog Saloon v. Board of Sedgwick County Comm'rs*, 29 Kan. App. 2d 928, 930, 33 P.3d 869 (2001). Further, contractual agreements that conflict with statutory provisions are considered void. See, e.g., *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, Syl. ¶ 5, 304 P.3d 1226 (2013); *Melton v. Prickett*, 203 Kan. 501, 510, 456 P.2d 34 (1969). In short, the plea agreement does not prevent the State's motion.

*Double Jeopardy*

The Fifth Amendment mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Section 10 of the Kansas Constitution Bill of Rights states: "No person shall . . . be twice put in jeopardy for the same offense." The guarantee against double jeopardy consists of three independent protections:  "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); see also *State v. Freeman*, 236 Kan. 274, 280-81, 689 P.2d 885 (1984) (same test under Kansas Constitution as under United States Constitution).

As the Court of Appeals noted, the United States Supreme Court has held that, when considering whether a subsequent increase in the severity of a criminal sentence constitutes a double jeopardy violation, the appropriate inquiry is whether the defendant had a legitimate expectation of finality in his or her sentence. *United States v. DiFrancesco*, 449 U.S. 117, 135-36, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980). Lehman argues that the corrective imposition of an extended supervisory period after he had fully completed his original sentence constitutes the imposition of multiple punishments for the same offense, in violation of double jeopardy, because he had a legitimate expectation that his sentence was final. We agree.

7

*Standard of Review*

Whether a double jeopardy violation occurs under either the United States or Kansas Constitutions is a question of law subject to unlimited review. *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 1, 133 P.3d 48 (2006).

*Analysis*

Before proceeding to analyze the double jeopardy issue, we pause to note that Lehman did not raise the issue in the district court. Nevertheless, the Court of Appeals chose to address double jeopardy, noting that "this issue is one that is argued only on admitted facts, would determine the appeal if we rule in Lehman's favor, and involves a fundamental right." 2015 WL 7162178, at *4 (citing *State v. Walker*, 283 Kan. 587, Syl. ¶ 14, 153 P.3d 1257 [2007]). The State did not cross-petition the Court of Appeals' decision to reach the merits of this issue, did not reply to the petition for review, and did not file a supplemental brief to this court; therefore, we need not determine whether the panel erred in addressing the merits of this issue. See *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016) ("Because the State did not cross-petition to challenge the Court of Appeals' preservation ruling in favor of [the defendant], we will not consider whether the panel erred on this point."); see also *State v. Davey*, 306 Kan. 814, 819, 397 P.3d 1190 (2017) ("[T]he State has not challenged—either through a cross-petition for review or in its supplemental brief to this court—the Court of Appeals' implied ruling in favor of [the defendant] on the State's nonpreservation claim."). Consequently, we will review the panel's double jeopardy holding.

The panel pointed out that Kansas courts have yet to rule on the question of whether a defendant has a legitimate expectation of finality in an illegal sentence after that sentence has been fully served, but other federal and state courts have. Since

8

*DiFrancesco*, multiple federal courts have held that after a defendant has completed a sentence, a legitimate expectation in the finality of the sentence arises and double jeopardy principles prevent reformation of the original completed sentence. See, e.g., *United States v. Silvers*, 90 F.3d 95, 101 (4th Cir. 1996) ("[O]nce a defendant fully serves a sentence for a particular crime, the Double Jeopardy Clause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime."); *United States v. Daddino*, 5 F.3d 262, 265 (7th Cir. 1993) (finding that completion of incarceration portion of sentence precluded any increase of it); *Oksanen v. United States*, 362 F.2d 74, 80 (8th Cir. 1966) (applying the rule to a completed term of probation).

In accord, many of our sister States have taken positions in harmony with Lehman's argument. For instance, in *People v. Williams*, 14 N.Y.3d 198, 925 N.E.2d 878, 899 N.Y.S.2d 76, *cert. denied* 562 U.S. 947 (2010), the court addressed five appeals involving defendants whose original sentences should have included postrelease supervision but did not. The Department of Correctional Services sought to amend the judgments of conviction after the defendants had completed the sentences originally imposed upon them. A majority of the court found that the State lacked the ability to do so:

> "[T]here must be a temporal limitation on a court's ability to resentence a defendant [citation omitted] since criminal courts do not have perpetual jurisdiction over all persons who were once sentenced for criminal acts. Even where a defendant's sentence is illegal, there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired). In these situations, the sentences are beyond the court's authority and an additional term of [postrelease supervision] may not be imposed."14 N.Y.3d at 217.

Particularly relevant to this case, *People v. Velez*, 19 N.Y.3d 642, 975 N.E.2d 907, 899 N.Y.S.2d 76 (2012), relied on *Williams* to reject the resentencing of a defendant on double jeopardy grounds even though the State had commenced the resentencing

9

proceedings *before* the defendant was released from custody. The court noted that commencing such a proceeding does not defeat a defendant's legitimate expectation of finality. 19 N.Y.3d at 650. One purpose of the *Williams* rule was to identify a temporal limitation on a court's jurisdiction to resentence a defendant, at which time resentencing to add postrelease supervision is constitutionally barred. 19 N.Y.3d at 650.

Likewise, the Supreme Court of New Jersey found the *Williams* rationale persuasive, concluding that to permit resentencing to correct an illegal sentence after the defendant has fully served the original sentence would be "a violation of a defendant's fundamental rights under the Double Jeopardy Clauses of the United States and New Jersey Constitutions." *State v. Schubert*, 212 N.J. 295, 313, 53 A.3d 1210 (2012).

The Iowa Court of Appeals applied the concept to an attempt to add a statutorily required extended period of probation to a fully served original sentence and probation term, opining that when the defendant "was discharged from probation after serving the term ordered by the sentencing court, he had a legitimate expectation that the sentence, although illegal . . . was final. Double jeopardy principles . . . prevented the court from thereafter modifying the sentence to include an additional probation term." *State v. Houston*, No. 09-1623, 2010 WL 5050564, at *4 (Iowa App. 2010) (unpublished opinion). See also *Lanier v. State*, No. CR-17-0429, 2018 WL 3408123, at *3 (Ala. Crim. App. 2018) ("Although an illegal sentence may be corrected after the defendant has begun serving the sentence without double-jeopardy implications, resentencing a defendant after the expiration of a sentence, even to correct an illegal sentence, results in multiple punishments for the same offense."); *Commonwealth v. Selavka*, 469 Mass. 502, 14 N.E.3d 933 (2014) (trial court not permitted to add statutorily mandated GPS monitoring as additional condition of probation; would violate double jeopardy prohibition).

The panel countered by pointing to *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992), in which the court declared that a defendant "cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification." Pointedly, Rourke was still serving his sentence when the district court corrected his sentence to add a mandatory period of parole that had been inadvertently overlooked at the original sentencing. Here, no one is disputing that Lehman's sentence could have been corrected while he was still serving his original sentence. Moreover, the view that the district court cannot correct an illegal sentence after the sentence expires and the direct appeal has been completed (or the time to appeal has lapsed) is more in keeping with the purpose of double jeopardy protection, allowing a person to move on with his or her life after having paid the debt to society without wondering whether the government will come back to extract further punishment.

The panel was also persuaded by its observation that few cases had addressed the same scenario as presented here, i.e., a motion to correct an illegal sentence being filed before the original sentence was completed but resentencing effected after the original sentence was complete. It then pointed to *State v. Horton*, 331 N.J. Super. 92, 102, 751 A.2d 141 (2000), in which the New Jersey appellate court held there was no double jeopardy violation when the State moved to correct the originally imposed fixed term of probation—which should have been lifetime community supervision—while the defendant was still serving the original probation, even though the court did not order the correction until after the original probation term was completed. The New Jersey Supreme Court distinguished *Horton* from *Schubert*, 212 N.J. at 310-11, based on the timing of the filing of the motion to correct. See also *State v. Calmes*, 632 N.W.2d 641 (Minn. 2001) (no double jeopardy violation when State sought correction of sentence after defendant released from prison but was still on conditional release).

The panel does not mention *Velez*, 19 N.Y.3d 642, discussed above, which reached the contrary conclusion by favoring finality. The court admonished that the State

11

should seek corrective sentences far enough in advance that defendants will not face the anxiety of completing all the terms of their sentences, only to find themselves subject to jeopardy again in the form of new sentences. That admonishment is particularly poignant here, given that the Department of Corrections notified the prosecutor's office of the incorrect sentence over a year before Lehman completed his sentence.

But more importantly, neither the State nor the panel explain the status of a person who has completed the original sentence imposed by the sentencing judge without any other judge entering any other order purporting to correct, modify, stay, or suspend that original sentence. To be clear, we are not faced with a circumstance in which a district court purported to stay or suspend Lehman's discharge from custody. Therefore, the only legal status that comports with our statutes and caselaw is that the original sentence had expired and Lehman had been discharged from custody, as a matter of law, the day after he completed his court-ordered judgment of sentence.

Otherwise, if Lehman is deemed to have remained on postrelease supervision after his sentence expired but before any other court order, "he [would] still be under a sentence." *State v. Mossman*, 294 Kan. 901, 907, 281 P.3d 153 (2012) ("postrelease supervision is undeniably part of a defendant's sentence"). That would mean that the prosecutor in this case, by simply filing a motion to correct an illegal sentence, effectively modified the district court's original sentencing judgment to impose a harsher sentence. Although the law invests prosecutors with a great deal of authority and discretion, it does not authorize a member of the executive branch to change a judge's order. See *State v. Simmons*, 307 Kan. 38, 42, 405 P.3d 1190 (2017) (executive branch cannot modify a sentence; executive branch is not a court of criminal jurisdiction), *cert. denied* 138 S. Ct. 2678 (2018).

Consequently, when Lehman completed his original sentence—even if illegal—without a court order that superseded the judgment of the sentencing judge, he was no

longer subject to the jurisdiction of the criminal justice system. Any additional sentence imposed on him for the same offense after completing the original sentence constitutes a multiple punishment proscribed by the double jeopardy provisions of our federal and state constitutions.

Moreover, the argument that the notice of the filing of the motion to correct an illegal sentence negated any expectation of finality Lehman may have had upon completing his original sentence is similarly unavailing. A person who has appeared before a judge and received a sentence in open court can legitimately expect that court order to remain in effect until told otherwise by a district court judge. See K.S.A. 21-4704(e)(2) ("In presumptive imprisonment cases, the sentencing court shall pronounce the complete sentence which shall include . . . the period of postrelease supervision."). Here, Lehman's original sentence, including postrelease supervision period, was not countermanded by a court of law before it was completely served and terminated; Lehman is entitled to be discharged from custody.

Reversed and remanded with directions to discharge the defendant.

* * *

ROSEN, J., concurring: I agree with the majority's conclusion that, under the facts of this case, Lehman had a legitimate expectation in the finality of his sentence. I write separately to emphasize the special circumstances of the case, which, in my view, make this an exceptional situation.

The State filed its motion to correct an illegal sentence before Lehman was discharged from postrelease supervision. If the State had properly served Lehman and had obtained judicial correction of the sentence before the sentence expired, even if it were the day before expiration, Lehman would have had no legitimate expectation of

13

finality of his sentence. If the State had filed the motion to correct and had obtained a judicial stay of finality before the sentence expired, that, in my view, would also have served to preserve the jurisdiction of the sentencing court.

Here, however, despite knowing Lehman's residence at the time he was on postrelease supervision, the State served Lehman's trial counsel instead of Lehman—and trial counsel was no longer Lehman's attorney. By the time the State obtained service on Lehman, his sentence had expired. Having heard nothing informing him that his sentence might be illegal and could be made longer at a later hearing, Lehman had a legitimate expectation that he had fully served his sentence.

\* \* \*

STEGALL, J., concurring:  I concur in the result. I would not reach the double jeopardy question because I would simply apply the precedent we established in *State v. Montgomery*, 295 Kan. 837, 286 P.3d 866 (2012), that motions to correct an illegal sentence are rendered moot by the expiration of the sentence. In *Montgomery* we applied this rule against a defendant, and I would apply the same principle now to foreclose the State's claim.